UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
JOHAN BAILEY,

<table>
<tr><td></td><td></td></tr>
</table>

|  |  |
|---|---|
| Plaintiff, | **COMPLAINT** |
| -against- | JURY TRIAL DEMANDED |
| THE CITY OF NEW YORK AND JOHN DOES 1-2, | |
| Defendants. | |

-------------------------------------------------------------------------------x

Plaintiff, JOHAN BAILEY, by and through his attorneys, **THE LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC,** as and for his Complaint, respectfully alleges, upon information and belief:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitution of the United States of America.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

## NOTICE OF CLAIM

4. Plaintiff filed a Notice of Claim with the Comptroller of the City of New York within 90 days of the accrual of his claim for false arrest.

5. More than 30 days have elapsed since the filing of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

6. Plaintiff has complied with all conditions precedent necessary to commence an action

pursuant to New York State Law.

7. This action was commenced within one year and ninety days from the date the pendent claims herein accrued.

## VENUE

8. Venue is properly laid in the United States District Court for the Southern District of New York under U.S.C. § 1391(b), in that a substantial part of the events giving rise to the claim occurred in New York County, in the State of New York.

## JURY DEMAND

9. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

10. Plaintiff, JOHAN BAILEY, is, and has been, at all relevant times, a resident of New York County in the City and State of New York.

11. At all relevant times hereinafter mentioned, defendant, City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

12. At all relevant times hereinafter mentioned, the Doe Defendants were individuals employed by the City of New York as a members of the NYPD.  The Doe Defendants are sued herein in their official and individual capacities.  At all times hereinafter mentioned, the Doe Defendants were assigned to PSA 5 of the NYPD.

13. At all times hereinafter mentioned the defendants, either personally or through their

employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or CITY OF NEW YORK.

14. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant, THE CITY OF NEW YORK.

15. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant, THE CITY OF NEW YORK.

## **FACTS**

16. On July 4, 2017, at approximately 12:00 a.m., plaintiff, JOHAN BAILEY, was lawfully present on 132nd Street between Madison Avenue and Fifth Avenue in the County, City, and State of New York.

17. Plaintiff was not engaged in any illegal or suspicious activity.

18. At this time, the Defendants arrived on duty and approached the Plaintiff.

19. The Defendants did so without any legal justification or excuse.

20. Although there was no legal basis to stop, detain, or seize the Plaintiff, the Defendants placed the Plaintiff in handcuffs and searched him.

21. The Defendants applied handcuffs to Plaintiff in an intentionally excessively tight manner, causing Plaintiff to suffer pain, numbness, and injuries to his hands and wrists

22. Plaintiff repeatedly complained to the Defendants that he was experiencing pain and numbness to his wrists and hands and the Defendants did not loosen Plaintiff's handcuffs.

23. The search yielded no evidence of any guns, drugs, or contraband.

24. Despite the absence of any evidence of wrongdoing on the part of plaintiff, the Defendants formally arrested him.

3

25. The decision to arrest the Plaintiff was objectively unreasonable under the circumstances.

26. The Plaintiff was not involved in any unlawful or suspicious activity, nor was he involved in any activity which the Defendants could have reasonably believed gave rise to justification to place him under arrest.

27. Plaintiff was placed in an NYPD vehicle and was transferred from that location to a stationhouse of local area precinct where he was held for several hours.

28. Plaintiff was eventually transferred from the local area precinct to New York County Central Booking where he was summarily released from custody without explanation and without being charged.

29. At no time did there exist sufficient cause to seize or arrest Plaintiff, nor could the Defendants have reasonably believed that such cause existed.

30. The factual allegations and testimony sworn to by Defendants were materially false and deliberately made to justify the illegal arrest of Plaintiff.

31. At no time did any other members of the NYPD take any steps to intervene in, prevent, or otherwise limit the heretofore misconduct engaged in against Plaintiff.

32. The Defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements regarding the false allegations and misconduct described herein as required.

33. That at all times relevant herein, the Defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

**FIRST CLAIM FOR RELIEF FOR**
**FALSE ARREST**
**UNDER 42 U.S.C. § 1983**

34. Plaintiff JOHAN BAILEY repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein and at length.

35. As a result of the Defendants' conduct, Plaintiff was subjected to illegal, improper and false arrest, taken into custody, and caused to be falsely imprisoned, detained, and confined without any probable cause, privilege, or consent.

36. As a result of the foregoing, Plaintiff's liberty was restricted, Plaintiff was put in fear for his safety, and he was falsely arrested without probable cause.

**SECOND CLAIM FOR RELIEF FOR**
**EXCESSIVE FORCE**
**UNDER 42 U.S.C. § 1983**

37. Plaintiff JOHAN BAILEY repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein and at length.

38. As a result of the Defendants' conduct, the Plaintiff was subjected to a level of force by the Defendants in excess of what was reasonable under the circumstances.

39. As a result of the foregoing, Plaintiff's liberty was restricted, Plaintiff was put in fear for his safety, and he was physically injured.

## THIRD CLAIM FOR RELIEF
## FOR MUNICIPAL LIABILTIY
## <u>PURSUANT TO 42 U.S.C. SECTION 1983</u>

40. Plaintiff, repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein and at length.

41. Defendants arrested, searched, and incarcerated plaintiff JOHAN BAILEY, in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said search, arrest and incarceration would jeopardize Plaintiff's liberty, well-being, safety, and violate their constitutional rights.

42. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

43. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of THE CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

44. Those customs, policies, patterns, and practices include, but are not limited to:

      i.     requiring officers to make a predetermined number of arrests and/or issue a predetermined number of summonses within a predetermined time frame;

      ii.    requiring precincts to record a predetermined number of arrests and/or issue a predetermined number of summonses within a predetermined time frame;

      iii.   failing to take any measures to correct unconstitutional behavior when brought to the attention of supervisors and/or policy makers;

      iv.   failing to properly train police officers in the requirements of the United States Constitution.

45. The aforesaid customs, policies, usages, practices, procedures and rules of THE CITY OF

NEW YORK and the New York City Police Department directly cause, *inter alia*, the following unconstitutional practices:

     i.     arresting individuals regardless of probable cause in order to inflate the officer's arrest statistics;

     ii.     arresting individuals regardless of probable cause in order to positively affect precinct-wide statistics;

     iii.     falsifying evidence and testimony to support those arrests;

     iv.     falsifying evidence and testimony to cover up police misconduct.

46. Upon information, this policy was in existence as of July 4, 2017, as codified in an October 17, 2011, Police Officer Performance Objectives Operation Order in which NYPD Commissioner Kelly directed all commands that, "Department managers can and must set performance goals" relating to the "issuance of summons, the stopping and questioning of suspicious individuals, and the arrests of criminals."

47. Upon information and belief, that same Operation Order stated, "uniformed members . . . who do not demonstrate activities . . . or who fail to engage in proactive activities . . . will be evaluated accordingly and their assignments re-assessed."

48. In the case of <u>Floyd v City of New York</u>, 813 F. Supp. 2d 417, 448 (S.D.N.Y.) on reconsideration, 813 F. Supp. 2d 457 (S.D.N.Y. 2011), United States District Judge Shira A. Scheindlin denied the City of New York's motion for summary judgment, in part, based on evidence that the NYPD had a widespread practice of imposing illegal stop and frisk, summons, and arrest quotas on officers. The evidence cited in <u>Floyd</u>, included testimony from various officers, audio recordings of roll call meetings in which precinct commanders issued orders to produce certain numbers of arrests, stops and frisks, and summonses, and a labor grievance on behalf of six officers and one sergeant who were transferred out of the

same 75 precinct where plaintiff was arrested for allegedly failing to meet a ten summons-per-month quota. In January 2006, a labor arbitrator found that this same 75 precinct had imposed summons quotas on its officers in violation of New York law.

49. In another Southern District of New York case, <u>Schoolcraft v. City of New York</u>, 10 CV 6005 (RWS), the plaintiff, a police officer assigned to Brooklyn's 81 precinct alleged that precinct commanders and supervisory personnel expressly imposed arrest and summons quotas, and explicitly directed officers to "arrest and summons fully innocent people" and then come up with a justification later.

50. In 2012, Police Officer Craig Matthews commenced <u>Matthews v. City of New York</u>, 12 CV 1354 (BSJ) in the Southern District of New York, alleging that his complaints that the existing quota system was leading to unjustified stops and arrests, and thereby causing damage to the department's relationship with the local community led to his termination. There was little dispute that he made these complaints or that they were well founded. <u>See Matthews v. City of New York</u>, 779 F.3d 167, 169 (2d Cir. 2015).

51. This data-driven policing plan has resulted in other lawsuits filed by members of the NYPD in the United States District Court for the Southern District of New York, alleging that the NYPD requires officers to meet fixed numerical goals for arrests and court summonses each month.

52. In one of these lawsuits, <u>Adhyl Polanco v. The City of New York, et al.</u>, 16 CV 9196 (LTS), for example, Officer Polanco alleges that he was retaliated against for his opposition to the racially discriminatory quota practices of the NYPD, and that he was falsely and pretextually charged with insubordination after he attempted to report misconduct and corruption within the NYPD.

53. Officer Polanco alleges that he spoke to the media and the NYPD Internal Affairs Bureau that his supervisors were aggressively using threats of termination and negative employment actions such as low performance evaluations and punitive postings, to compel police officers to issue illegal summonses and make illegal arrests in order to achieve a goal of a certain number of arrests and a certain number of summonses set by the NYPD for each precinct for that quarter.

54. That this plan is still in effect is also reflected in a class action suit apparently filed in August 2015 by various police officers alleging that the NYPD still requires officers to meet fixed numerical goals for arrests and court summonses each month, according to a New York Times article published February 18, 2016, which can be found online at http://nyti.ms/1R9FCGu.

55. Upon information and belief, Police Officer Edwin Raymond was or is a Plaintiff in this lawsuit.

56. Officer Raymond has alleged in his lawsuit and in the media that the NYPD engaged in unconstitutional, racist, discriminatory, and unlawful practices in attempting to achieve the goal of meeting quotas, as opposed to combating crime.

57. Despite the fact that this unconstitutional conduct has been reported by civilians and members of law enforcement alike, Police Commissioner William Bratton, responded to these serious allegations dismissively. http://newyork.cbslocal.com/2016/02/23/nypd-crime-statistics-available-public/.

58. The policy or plan was kept in effect through the date of plaintiff's arrest, despite the municipal defendant's knowledge that county prosecutors were often not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was

insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecutors often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

59. This is precisely the conduct that has given rise to the constitutional violations against Mr. Bailey alleged herein.  He was arrested without any probable cause and the New York County District Attorney declined to prosecute him.

60. In an Order dated November 30, 2009, in <u>Colon v. City of New York</u>, 09- CV-0008 (E.D.N.Y.) (Docket No. 34), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

61. Therefore, it is apparent that through the litigation brought in the Eastern and Southern Districts of New York, as well as the many cases filed in New York's State courts, that thousands of civilians have alleged that members of the NYPD have deliberately arrested them without probable cause. Thus, even if the municipal defendant was not the architect of the policies and routinized conduct causing these unlawful arrests, it was certainly on notice of the practice, and by failing to take any meaningful corrective steps, has ratified, endorsed, or otherwise communicated its acceptance of this policy to the officers it employs.

62. However, in an article in the New York Times on February 4, 2016, the link to which is http://nyti.ms/1nPv0mO, the City proudly announced that the NYPD had "created a new 40-member legal unit that develops evidence that the Law Department can use to defend lawsuits against the police, and the [Law Department] hired about 30 lawyers to bolster its litigation teams and to try more cases in court." According to this article, these steps were well-received by police union leaders.

63. Accordingly, rather than take meaningful steps to reduce and eliminate such misconduct by its officers, the City of New York and the NYPD have instead affirmatively announced a renewed commitment to defending such misconduct.

64. Stated differently, the City of New York's response to the litigation caused by misconduct on the part of the NYPD is, perplexingly, directed not at the deliberate, frequent, brazen constitutional violations giving rise to the litigation, but rather at defending such misconduct, thereby enabling officers to continue engaging in unconstitutional conduct without fear of being sued or held accountable. In so doing, the City has dispensed altogether with any pretense that such misconduct is not sanctioned, ratified, or otherwise endorsed by the City of New York and the NYPD's executive leaders and supervisory personnel.

65. Based on the foregoing, the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York, at the bare minimum, has been on notice of, and remained deliberately indifferent to, the risk that the undue emphasis on arrest quotas, or minimum activity levels, particularly when coupled with a decidedly and deliberately indifferent level of supervision, would lead to the violation of individuals' constitutional rights in general, and the violation of plaintiff's rights in particular.

66. The foregoing customs, policies, usages, practices, procedures and rules of THE CITY OF NEW YORK and the New York City Police Department constitute a deliberate indifference to the safety, well-being and constitutional rights of Plaintiff, JOHAN BAILEY.

67. The foregoing customs, policies, usages, practices, procedures and rules of THE CITY OF NEW YORK and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

68. The foregoing customs, policies, usages, practices, procedures and rules of THE CITY OF NEW YORK and the New York City Police Department were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

69. As a result of the foregoing customs, policies, usages, practices, procedures and rules of THE CITY OF NEW YORK and the New York City Police Department, Plaintiff was placed under arrest unlawfully.

70. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

71. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff's constitutional rights.

72. All of the foregoing acts by defendants deprived Plaintiff of federally protected constitutional rights, particularly their Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**FOR FALSE ARREST AND**
**EXCESSIVE FORCE**
**PURSUANT TO STATE LAW**

73. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

74. That at all times hereinafter mentioned, defendant THE CITY OF NEW YORK assumed responsibility supervision, and authority over THE NEW YORK CITY POLICE DEPARTMENT and, its agents, servants and employees, and is liable to plaintiff for the acts complained of herein under the theories of vicarious liability and *respondeat superior.*

75. Plaintiff was detained and held under the imprisonment and control of the defendants under false pretenses.

76. Due to the negligence of the defendants, their servants, agents, employees, licensees, independent contractors and/or police officers while in the course and scope of their employment with THE CITY OF NEW YORK, and acting under authority of the NEW YORK CITY POLICE DEPARTMENT, falsely arrested and imprisoned the plaintiff, without warrant, authority of law or probable cause therefore.

77. That the acts and conduct on the part of the individual defendants constituting unlawful and unconstitutional conduct are: unlawfully and intentionally detaining and confining plaintiff against his will and without his consent; unlawfully and intentionally detaining and confining plaintiff without privilege, probable cause or valid legal process; fabricating evidence against the plaintiff; unlawfully detaining and confining plaintiff through the unlawful arrest of plaintiff; unlawfully detaining and confining plaintiff through the use of force; unlawfully arresting plaintiff and placing plaintiff in handcuffs without reasonable cause therefore, and

13

committing such other acts resulting in the unlawful arrest and imprisonment of plaintiff.

78. That at all times hereinafter mentioned, said arrest, confinement and restraint of liberty was not otherwise privileged.

79. That plaintiff was conscious of the confinement.

80. That as a direct, sole and proximate result of the false arrest, imprisonment, and excessive force, plaintiff was caused to and did sustain humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal and business reputation, inconvenience, disturbance and disruption of life, legal expenses, and loss of personal income.

81. By the actions described above, defendants "POLICE OFFICERS" and THE CITY OF NEW YORK caused plaintiff to be falsely arrested and/or falsely imprisoned without probable cause, without reasonable suspicion, illegally, without any proper claims, and without any right or authority to do so; and caused plaintiff to suffer physical injuries. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

82. As a result of the foregoing, plaintiff was deprived of their liberty, suffered a loss of quality and/or enjoyment of life, economic injury, physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

  **WHEREFORE**, the plaintiff respectfully requests judgment against defendants as follows:

  i.  an order awarding compensatory damages in an amount to be determined at trial;

14

    ii.      an order awarding punitive damages in an amount to be determined at trial;

    iii.     reasonable attorneys' fees and costs under 42 U.S.C. §1988; and

    iv.     directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Dated:  New York, New York
        March 27, 2018

                        Respectfully submitted,

                        **LAW OFFICES OF MICHAEL S.
LAMONSOFF, PLLC**
*Counsel for the Plaintiff*


                              /S/
        By:    JESSICA MASSIMI (JM-2920)
              32 Old Slip, 8th Floor
              New York, New York 10005
              (212) 962-1020

15